**HASSETT GLASSER, P.C.**
**1221 East Osborn Road**
**Suite 102A**
**Phoenix, Arizona 85014-5540**
**(602) 264-7474**

Myles P. Hassett, No. 012176
myles@hassettlglasser.com
Jamie A. Glasser, No. 029729
jamie@hassettglasser.com
David R. Seidman, No. 031663
david@hassettglasser.com
*Attorneys for Counterclaim-Defendant*
*Reliance Hospitality, LLC, d/b/a*
*Reliance Hotel Group*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Reliance Hospitality LLC, d/b/a Reliance Hotel Group, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> 5251 S. Julian Drive, LLC, d/b/a Stay Tucson Inn and Suites <br><br> Defendant. | **NO. CV-22-00149-TUC-JAS-MSA** <br><br> **NOTICE OF RULE 30(b)(6) DEPOSITION OF 500 MANSFIELD AVENUE OWNER LLC, D/B/A DOUBLETREE BY HILTON PITTSBURGH-GREEN TREE** <br><br> (Assigned to the Honorable James A. Soto) <br><br> (Referred to the Honorable Maria S. Aguilera, Magistrate Judge) |
| 5251 S. Julian Drive, LLC, d/b/a Stay Tucson Inn and Suites; 2930 Waterfront Parkway IN LLC, d/b/a Waterfront Hotel & Conference Center; Crown South Hill Owners LLC, d/b/a Crowne Plaza Pittsburgh South; 500 Mansfield Avenue Owner LLC, d/b/a Doubletree | |

by Hilton Pittsburgh-Green Tree; 101 Mall Boulevard Owner LLC, d/b/a Doubletree by Hilton Pittsburgh-Monroeville Convention Center; and 383 South Center Street, Windsor Locks LLC, d/b/a Ramada by Wyndham Windsor Locks,

Counterclaim-Plaintiffs,

v.

Reliance Hospitality LLC, d/b/a Reliance Hotel Group,

Counterclaim-Defendant.

**TO:  500 MANSFIELD AVENUE OWNER LLC, D/B/A DOUBLETREE BY HILTON PITTSBURGH-GREEN TREE AND THEIR ATTORNEYS OF RECORD**

YOU ARE HEREBY NOTIFIED that, pursuant to Fed. R. Civ. P. 30, the deposition will be taken upon oral examination of the person(s) whose name(s) and address(es) are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below.

If you require an interpreter to translate your testimony, please advise the undersigned attorney no later than ten (10) days before the deposition date, designating the specific language and dialect

**PERSONS TO BE EXAMINED:**          **A designated representative(s) of 500 Mansfield Avenue Owner LLC,**

2

**d/b/a Doubletree by Hilton Pittsburgh-Green Tree, pursuant to Ariz. R. Civ. P. 30(b)(6), on the matters designated in Exhibit A, attached.**

c/o Warner Angle Hallam Jackson & Formanek, PLC
2555 East Camelback Road, Suite 800
Phoenix, Arizona 85016

Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004

| | |
|---|---|
| **DATE AND TIME OF THE DEPOSITION:** | **November 21, 2022 at 9:00 a.m. MST** |
| **LOCATION OF DEPOSITION:** | **Hassett Glasser, P.C.** **1221 East Osborn Road** **Suite 102A** **Phoenix, Arizona 85014** |

DATED this 4th day of November, 2022.

HASSETT GLASSER, P.C.

By: _/s/ David R. Seidman_____
    MYLES P. HASSETT
    JAMIE A. GLASSER
    DAVID R. SEIDMAN
    *Attorneys for Counterclaim-Defendant*
    *Reliance Hospitality, LLC, d/b/a*
    *Reliance Hotel Group*

**CERTFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2022, I caused the foregoing

3

document to be served via email on counsel of record as follows:

Lindsay G. Leavitt
Dina G. Aouad
Jordan T. Leavitt
JENNINGS, STROUSS & SALMON, P.L.C
One East Washington Street, Suite 1900
Phoenix, AZ 85004-2554
Tel. (602) 262-5911
Email: lleavitt@jsslaw.com
daouad@jsslaw.com
jleavitt@jsslaw.com
*Attorneys for Plaintiff*
*Reliance Hospitality, LLC, d/b/a Reliance Hotel Group*

J.Henk Taylor
WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC
2555 East Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 264-7101
Email: htaylor@warnerangle.com
*Attorneys for Defendant and Counterclaim Plaintiffs*

Joshua Wurtzel (admitted pro hac vice)
David J. Goldsmith (admitted pro hac vice)
John Moore (admitted pro hac vice)
SCHLAM STONE & DOLAN LLP
26 Broadway, 19th Floor
New York, New York 10004
Tel.: (212) 344-5400
Email: jwurtzel@schlamstone.com
Email: dgoldsmith@schlamstone.com
Email: jmoore@schlamstone.com
*Attorneys for Defendant and Counterclaim Plaintiffs*

*/s/ Maureen Koonsman*
31898/NOD – 30(b)(6) 500 Mansfield Avenue Owner LLC

4

## EXHIBIT A: RULE 30(b)(6) TOPICS

Pursuant to Fed. R. Civ. P. 30(b)(6), and in conjunction with this Notice, Counterclaim-Defendant Reliance Hospitality, LLC, d/b/a Reliance Hotel Group ("Reliance") will take the following inquiry of Counterclaim-Plaintiff 500 Mansfield Avenue Owner LLC, d/b/a Doubletree by Hilton Pittsburgh-Green Tree ("Mansfield"):

## <u>DEFINITIONS</u>

1. "You," "your," "yourself," and "Mansfield" mean 500 Mansfield Avenue Owner LLC, d/b/a Doubletree by Hilton Pittsburgh-Green Tree, and the past and present representatives, officers, directors, members, managers, employees, agents, assigns, predecessors in interest, servants, investigators, attorneys, and any other person(s) acting on your behalf.

2. "Counterclaim Plaintiffs" means, collectively: Mansfield; 5251 S. Julian Drive, LLC, d/b/a Stay Tucson Inn and Suites; 2930 Waterfront Parkway IN LLC, d/b/a Waterfront Hotel & Conference Center; Crown South Hill Owners LLC, d/b/a Crowne Plaza Pittsburgh South; 101 Mall Boulevard Owner LLC, d/b/a Doubletree by Hilton Pittsburgh-Monroeville Convention Center; and 383 South Center Street, Windsor Locks LLC, d/b/a Ramada by Wyndham Windsor Locks; as well as each of their past and present representatives, officers, directors, members, managers, employees, agents, assigns, predecessors in interest, servants, investigators, attorneys, and any other person(s) acting on their behalf.

3. "Reliance" means Reliance Hospitality, LLC, d/b/a Reliance Hotel Group, and the past and present representatives, officers, directors, members, managers, employees, agents, assigns, predecessors in interest, servants, investigators, attorneys, and any other person(s) acting on Reliance's behalf.

4. "Person(s)" means an individual, firm, corporation, company, association, organization or any other entity.

5.    "Communication(s)" includes in-person, telephone and video conversations, meetings, conferences, letters, correspondence, emails, text messages, SMS, MMS, postal mail, facsimiles, social media correspondence and posts, direct messaging, and instant messaging.

6.    "Contract" means any contract between the parties or to any contract(s) otherwise a subject of this action.

7.    "Counterclaim" means Counterclaim Plaintiffs' Counterclaim against Reliance dated April 25, 2022.

8.    "Green Tree Hotel" means the Doubletree by Hilton Pittsburgh-Green Tree located at 500 Mansfield Avenue, Pittsburgh, Pennsylvania 15205, as referenced in your Counterclaim.

9.    "Green Tree HMA" means the Hotel Management Agreement between Mansfield and Reliance dated June 21, 2021, and referenced in your Counterclaim.

10.    "Liquor License Agreement" means the alleged oral agreement between Mansfield and Reliance to obtain a liquor license for the Green Tree Hotel. (*See* Counterclaim ¶¶ 47-50.)

11.    "Interim Liquor License Agreement" means the alleged interim agreement between you and the prior owner of the Green Tree Hotel regarding use of an existing liquor license. (*See* Counterclaim ¶¶ 51-52.)

12.    "August 2021 Inspection" means the surprise inspection conducted by Mansfield's representative at the Green Tree Hotel in August 2021, as alleged in your Counterclaim. (*See* Counterclaim ¶¶ 57-59.)

13.    "Subject Hotels" means, collectively: the Green Tree Hotel; the Stay Tucson Inn and Suites located at 5251 S. Julian Drive, Tucson, Arizona 85706; the Waterfront Hotel & Conference Center located at 2930 Waterfront Parkway West Drive, Indianapolis, Indiana 46214; the Crowne Plaza Pittsburgh South located at 164 Fort Couch Road, Pittsburgh, Pennsylvania 15241; the Doubletree by Hilton

Pittsburgh-Monroeville Convention Center located at 101 Mall Boulevard, Monroeville, Pennsylvania 15146; and the Ramada by Wyndham Windsor Locks located at 383 S. Center Street, Windsor Locks, Connecticut 06096; as referenced in your Counterclaim.

14.    "Affiliates" means a company or corporation that is related to another company or corporation, whether by shareholdings or other means of common ownership or control, and also includes a subsidiary, parent, or sibling company or corporation.

## <u>TOPICS OF EXAMINATION</u>

1.    The formation, structure, and operation of Mansfield, including:

    A.    Its articles of organization, operating agreement, and any similar documents concerning company governance or operation;

    B.    Its members, managers, officers, and owners;

    C.    Its business purpose;

    D.    Its ownership of hotels, restaurants, and other businesses within the hospitality industry; and

    E.    Its financial records, accounts, sales, profits, expenses, costs, and revenues since January 1, 2019.

2.    The common or overlapping ownership of Mansfield and the other Counterclaim Plaintiffs in this lawsuit.

3.    The experience of Mansfield and of the common or overlapping owners of the Counterclaim Plaintiffs related to ownership and operation of hotels, restaurants, and other hospitality industry businesses like the Subject Hotels.

4.    Your acquisition, ownership, development, and operation of the Green Tree Hotel, including:

    A.    Your purchase of the hotel and obligations under any applicable franchise agreement related to the hotel, such as a franchise agreement with Hilton Hotels & Resorts or its affiliates;

B. Your meetings concerning the hotel;

C. Your business or investment plan, projected revenues, actual revenues, expenses, capital contributions, investments, financing, development, appraisals, and valuations of or related to the hotel;

D. Liquor licenses for the hotel;

E. Persons that you engaged, hired, or contracted with to provide hotel and restaurant management services for the hotel from January 1, 2019 to the present; and

F. The hotel's financial records, accounts, sales, profits, expenses, costs, and revenues since January 1, 2019.

5. The Green Tree HMA, including:

A. Your decision to enter into the agreement;

B. The provisions, terms, conditions and obligations under the agreement;

C. Your communications with Reliance related to the agreement;

D. The bases upon which you contend that you fully performed all of your material obligations under the agreement;

E. The bases upon which you contend that Reliance breached its obligations under the agreement and your resultant damages; and

F. Termination of the agreement.

6. The Liquor License Agreement, including:

A. Its formation, terms, conditions, and obligations;

B. Your engagement of a law firm to help obtain a liquor license for the Green Tree Hotel in connection with the agreement (*see* Counterclaim ¶¶ 47-49);

C. Your communications with Reliance related to the agreement;

D. The bases upon which you contend that you fully performed all of

8

your material obligations under the agreement;

    E.    The bases upon which you contend that Reliance breached its obligations under the agreement and your resultant damages; and

    F.    Any default under and termination of the agreement.

7.    The Interim Liquor License Agreement, including:

    A.    Its formation, terms, conditions, and obligations;

    B.    Your communications with Reliance and the prior owner of the Green Tree Hotel related to the agreement;

    C.    Your payments under the agreement; and

    D.    Any default under and termination of the agreement.

8.    The August 2021 Inspection, including:

    A.    Your representative who conducted the inspection;

    B.    Your communications with Reliance related to the inspection;

    C.    The process and results of the inspection; and

    D.    The "further" investigation you did related to room availability and lost revenue at the Green Tree Hotel (*see* Counterclaim ¶ 57).

9.    The incident at the Green Tree Hotel restaurant concerning the family of guests that was allegedly refused service by Reliance employees. (*See* Counterclaim ¶¶ 58-59.)

10.    All facts and documents upon which you base the following contentions set forth in the Counterclaim:

    A.    "When it came time for 500 Mansfield to close on its purchase of the hotel, 500 Mansfield learned for the first time that Reliance had completely dropped the ball and had not applied for a liquor license for the hotel at all—contrary to its agreement to handle this task." (Counterclaim ¶ 50.)

    B.    "Further, Reliance also failed to inform 500 Mansfield or otherwise

9

notice that the then-existing owner of the hotel (before 500 Mansfield) was operating with the prior owner's (the owner before 500 Mansfield's predecessor) liquor license. Thus, without a liquor license of its own, 500 Mansfield was required to pay $20,000 per month to this prior owner to get them to agree to a new, interim agreement." (Counterclaim ¶ 51.)

C. "500 Mansfield paid this amount for the first month after closing on the purchase of this hotel. This allowed 500 Mansfield to serve liquor for this first month. But given that the monthly cost of this interim agreement to allow 500 Mansfield to serve liquor was more than this hotel was earning, after this first month, 500 Mansfield stopping paying this $20,000 monthly fee and stopped serving liquor." (Counterclaim ¶ 52.)

D. "Though it has now applied for its own liquor license (after taking over this process from Reliance), 500 Mansfield still has not received a liquor license, and has thus been unable to serve liquor at its hotel other than through third-party vendors (which have their own liquor licenses)." (Counterclaim ¶ 53.)

E. "Had Reliance properly secured a liquor license for the hotel when 500 Mansfield initially told it to do so, 500 Mansfield would have been able to serve liquor at its hotel since June 2021." (Counterclaim ¶ 54.)

F. "Reliance also deliberately disregarded 500 Mansfield's instruction not to hire overly priced contract laborers to work in housekeeping. Indeed, contract laborers often cost upward of $40 per hour—well above standard pay for regular housekeepers. But despite 500 Mansfield's specific instruction on this, Reliance went ahead and

hired contract housekeepers at $40 per hour anyway." (Counterclaim ¶ 55.)

G.  "Reliance also lost (or claimed to have lost) financial information related to the hotel and failed to timely provide profit-and-loss statements to 500 Mansfield, in breach of the 500 Mansfield HMA." (Counterclaim ¶ 56.)

H.  "500 Mansfield representative's [August 2021 Investigation] also revealed gross mismanagement of the hotel's restaurant." (Counterclaim ¶ 58.)

I.  "500 Mansfield's representatives also discovered that the hotel restaurant's expenses didn't match up, revenues were surprisingly (and, given market conditions, unexpectedly) low, and the reports that Reliance prepared did not make sense—all of which suggested either gross mismanagement or theft, or both." (Counterclaim ¶ 60.)

J.  Counterclaim Plaintiffs' investigation of Reliance's management of the Subject Hotels following the August 2021 Investigation. (*See* Counterclaim ¶ 61.)

K.  "Despite being terminated or itself terminating the HMAs, Reliance refused to give the Owners profit-and-loss statements for the last quarter of 2021." (Counterclaim ¶ 89.)

L.  "[U]pon information and belief, of the $840,000 Reliance received in PPP funds, the overwhelming majority was attributable to Owners' hotels' employees, and was required to be used to pay these employees and other expenses of Owners' hotels. But upon information and belief, based, in part, on Reliance's refusal to tell Owners how much it received in PPP funds or how long those funds would last, Reliance wrongfully diverted some of these funds to pay

11

expenses for other hotels not owned by Owners. Alternatively, upon information and belief, Reliance underapplied for PPP funds for Owners' hotels employees and diverted PPP funds that should have otherwise gone to pay Owners' hotels' employees. Further, upon information and belief, Reliance already received the funds that it claims are due to it in this action through these PPP funds" (Counterclaim ¶ 90.)

11. Mansfield's responses and objections to Reliance's First Set of Requests for Production Nos. 1 through 41.

12. Mansfield's responses and objections to Reliance's First Set of Interrogatories Nos. 1 through 20.

13. Mansfield's business and financial records related to all of the foregoing categories.