**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reliance Hospitality LLC,<br><br>Plaintiff,<br><br>v.<br><br>5251 S Julian Drive LLC,<br><br>Defendant. | No. CV-22-00149-TUC-JAS (MSA)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Reliance Hospitality LLC moves for summary judgment on Defendant 5251 S. Julian Drive LLC's counterclaim for breach of contract.[1] The motion has been fully briefed and is suitable for decision without oral argument. For the following reasons, the Court will recommend that the motion be granted in part and denied in part.

## Background

Defendant is the former owner of a hotel in Tucson, Arizona (the Hotel), and Plaintiff is a hotel management company. (PSOF ¶¶ 1–2.)[2] In September 2019, Defendant and Plaintiff entered into a hotel management agreement (the Agreement). (PSOF ¶ 3.) The Agreement provided, among other things, that Plaintiff would manage the Hotel's staff and daily operations, and that Defendant would fund those operations. (PSOF ¶¶ 4–7.) A party could terminate the Agreement immediately because of the other party's "gross negligence, willful misconduct or fraud." (PSOF ¶ 13.) A party could also terminate because of a

---

[1] For ease of reference, the Court refers to the parties as "Plaintiff" and "Defendant," rather than "Counter-Defendant" and "Counterclaimant."

[2] "PSOF" refers to Plaintiff's statement of material facts. (Doc. 91.) "DSOF" refers to Defendant's responsive statement of material facts. (Doc. 108 at 15–23.)

"Termination Event," including the other party's failure to pay any sums due or perform any material obligation. (PSOF ¶¶ 11–12.) Termination because of a Termination Event required written notice to the defaulting party. (PSOF ¶ 11.)

In February 2022, Plaintiff sent Defendant a written notice of default, asserting that Defendant had breached the Agreement in numerous ways. (PSOF ¶¶ 15–17.) Plaintiff demanded "immediate action" from Defendant to cure the alleged breaches. (PSOF ¶ 18.) The parties dispute whether Defendant took such action. It is undisputed, however, that Plaintiff sent Defendant a written notice of termination on March 1, 2022. (PSOF ¶ 20.)

A few days later, Plaintiff sued Defendant for breach of contract. (PSOF ¶ 24.) Defendant countersued for breach of contract, alleging that Plaintiff had mismanaged the Hotel in ways that led to reduced revenues. (PSOF ¶¶ 26–27.) Defendant contends, among other things, that Plaintiff failed to collect rent from 12 to 14 long-term guests for several months, and that Plaintiff converted funds received from the Paycheck Protection Program to its own uses. (PSOF ¶ 27; DSOF ¶¶ 24–30.) Plaintiff denies these allegations.

**Legal Standard**

A party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

**Discussion**

Plaintiff argues that it is entitled to summary judgment on Defendant's counterclaim because Defendant waived its right to sue for breach of contract, and because Defendant has no evidence that it was damaged by any alleged breach. As discussed below, there is a triable issue as to whether Defendant waived Plaintiff's alleged breaches of the Agreement.

There is also a triable issue as to whether Defendant was damaged by Plaintiff's failure to collect rent from certain guests. Defendant has failed, however, to show a triable issue as to whether Plaintiff's other breaches resulted in damages.

## I. There is a triable issue as to whether Defendant waived its counterclaim.

"Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. v. Ranier Constr. Co.*, 607 P.2d 372, 374 (Ariz. 1980). To establish waiver through conduct, the party asserting waiver "must establish acts by the opposing party that are clearly inconsistent with an intention to assert the right in question." *Russo v. Barger*, 366 P.3d 577, 580 (Ariz. Ct. App. 2016). In other words, the party must show that the other party's "act[s] or omissions to act [are] so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible." *First Nat'l Bank of Ariz. v. Carruth*, 569 P.2d 1380, 1382 (Ariz. Ct. App. 1977) (quoting *Buffum v. Chase Nat'l Bank of N.Y.*, 192 F.2d 58, 61 (7th Cir. 1951)).

The Agreement in this case contains an antiwaiver clause, which provides that any waiver of a contractual right (like the right to sue for a breach) is invalid unless done in a signed writing. (Doc. 91-1 at 17.) A breach of contract can be waived through conduct notwithstanding the presence of an antiwaiver clause. *Gilbert MH, LLC v. Gilbert Fam. Hosp., LLC*, No. CV-18-04046-PHX, 2020 WL 2559802, at *5 (D. Ariz. May 19, 2020); *Haz-Mat Response Techs., Inc. v. Oxnard Commerceplex, LLC*, No. 1 CA-CV 22-0626, 2023 WL 4198068, at *5 (Ariz. Ct. App. June 27, 2023). However, "[i]n order to establish that an antiwaiver clause is not enforceable, the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision." Williston on Contracts § 39:36 (4th ed.).

So, to obtain summary judgment, Plaintiff must show unequivocally that Defendant *not only* intended to waive Plaintiff's breach *but also* intended that the antiwaiver clause would have no effect. Plaintiff has not carried this burden, as its motion does not even mention the antiwaiver clause. While Plaintiff addresses the clause in its reply brief, that

argument comes too late. *See SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 691 (D. Ariz. 2022) (refusing to consider an argument first raised in a reply to a summary judgment motion). In any event, as explained below, viewing the facts in the light most favorable to Defendant, a reasonable jury could find that Defendant did not intend to waive Plaintiff's breach, let alone the antiwaiver clause.

It is undisputed that Defendant was unhappy with Plaintiff's performance in January or February 2021. (PSOF ¶ 21.) It is also undisputed that Defendant allowed Plaintiff to continue managing the Hotel until the Agreement was terminated in March 2022. (PSOF ¶ 22.) Finally, it is undisputed that Defendant did not send Plaintiff *written* notice that Plaintiff was in breach. (PSOF ¶ 23.) While this evidence could support the inference that Defendant intended to waive Plaintiff's breach, it is unclear how it shows that Defendant intended to waive the antiwaiver clause. At least one court in this district has found that, under Arizona law, "conduct alone . . . is not sufficient to waive the antiwaiver clause itself" because a contrary result "would render the clause a nullity and not give any force to the intent of the parties." *Gilbert MH, LLC*, 2020 WL 2559802, at *5.

Regardless, other facts indicate that Defendant did not intend to waive Plaintiff's alleged breach or the antiwaiver clause. Defendant's representative, Yaacov Amar, testified that although Plaintiff's performance was poor during 2020, he gave Plaintiff a break because of "the timing and the period" (the global pandemic) and because one of Plaintiff's executives had a "very sick" father. (Doc. 108-2 at 8.) However, when Amar observed that Plaintiff was "doing not such a great job" in early 2021, he began requiring that Plaintiff engage in "weekly meetings on the Zoom" so that they could "figure out how to solve [the problem]" and "make the property get improvement." (*Id.* at 4.) In addition, Amar testified that he called Plaintiff a "[f]ew times" throughout 2021 "begging" for financial reports that Plaintiff was supposed to be providing. (*Id.* at 5, 9.) And when he found out that Plaintiff had not been collecting rent for certain long-term guests, he also called and demanded that Plaintiff begin eviction proceedings. (*Id.* at 5–6.)

There is more than one reasonable response to a breach of contract. One is to send

a formal written notice of default and, if the breach is not cured, to terminate the contract and file a lawsuit. Another is to treat formal, adversarial action as a last resort and to first try to resolve any issues informally. A reasonable jury could easily understand Defendant's conduct as fitting within the latter scenario. Defendant initially believed that the Hotel's issues were attributable to the pandemic and the personal affairs of Plaintiff's executive. So, believing that the issues would resolve themselves, Defendant did not take any action. But when it became apparent that Plaintiff was performing poorly, Defendant increased its supervision over Plaintiff (through weekly Zoom meetings) and started making specific demands for performance (for financial reports and to start the eviction process). In other words, Defendant escalated by responding with corrective action that was short of formal, adversarial action. A reasonable jury could infer from these facts that Defendant simply preferred to try and resolve issues informally before seeking formal recourse. That would mean that Defendant lacked intent to waive Plaintiff's breaches and the antiwaiver clause. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95–96 (2d Cir. 2015) (finding a triable issue as to waiver of a breach and an antiwaiver clause because the defendant's delay in noticing the breach and bringing suit "easily could be understood to reflect a belief . . . that immediate suit was unnecessary or was unwarranted because a financial reconciliation would occur eventually").

Plaintiff argues that Defendant should have taken "concrete actions, like sending a formal letter." However, there is no Arizona caselaw requiring that a contracting party take such steps to preserve its rights. *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 304–05 (D. Ariz. 2022). Plaintiff next points out that Defendant expanded Plaintiff's managerial responsibilities during the period that Plaintiff allegedly was in default. That certainly could support Plaintiff's waiver argument. To obtain summary judgment, though, Plaintiff must show that the *only* reasonable conclusion that can be drawn from the record is that Defendant intended to waive Plaintiff's breach and the antiwaiver clause. As noted, a reasonable jury could find that Defendant lacked such intent.

There is a triable issue as to whether Defendant waived its counterclaim. Summary

1 judgment should be denied on this ground.

2 **II.     There is a triable issue as to Defendant's damages relating to uncollected rent.**

3 A party must prove its damages with "reasonable certainty." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963) (citing *Jacob v. Miner*, 191 P.2d 734, 738 (1948)). This standard is satisfied when the party offers "some reasonable method of computing [the] net loss." *Great W. Bank v. LJC Dev., LLC*, 362 P.3d 1037, 1049 (Ariz. Ct. App. 2015) (alteration in original) (quoting *Lininger v. Dine Out Corp.*, 639 P.2d 350, 353 (Ariz. Ct. App. 1981)). That method need only "make an 'approximately accurate estimate' possible." *Gilmore*, 386 P.2d at 82 (quoting *Martin v. La Fon*, 100 P.2d 182, 183 (Ariz. 1940)).

Defendant alleges that Plaintiff breached the Agreement by failing to collect rent from certain long-term guests. (Doc. 18 at 23, ¶ 82.) Defendant's representative, Yaacov Amar, testified that the issue affected 12 to 14 rooms for a period of six to nine months, resulting in an estimated loss of about $84,000. (Doc. 108–2 at 5–6, 11–12.) Defendant's business associate, Brendan Petri, submitted a declaration to the same effect. (Doc. 108-9.) Petri explains that the rooms in question were rented at a range of $600 to $1,000 a month, and that rent was not collected for a period of nine months. (*Id.* ¶¶ 4–5.) Thus, he calculates the damages as ranging from a low of $64,800 (12 apartments rented at $600 per month for nine months) to a high of $126,000 (14 apartments rented at $1,000 for nine months). (*Id.* ¶ 6.)

Plaintiff argues, as a threshold matter, that this testimony should be disregarded as a sanction because Defendant did not include a computation of damages in its initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring a computation of damages). The discovery rules do provide that a "party is not allowed to use" information that was not disclosed under Rule 26(a). Fed. R. Civ. P. 37(c)(1). However, that sanction does not apply if the failure to disclose was "harmless." *Id.* There are several factors relevant to the harmlessness inquiry: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption at trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. v.*

*Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017)).

Defendant's failure to disclose a computation of damages is harmless. During his deposition in March 2023—two months before the close of discovery and three months before Plaintiff moved for summary judgment—Amar clearly described Defendant's method for calculating damages and stated that his testimony was based on Petri's calculations. Plaintiff had the relevant information long before discovery closed, so there is no surprise. Further, the Court can discern no prejudice to Plaintiff. To the contrary, given that Plaintiff was able to attack the substance of Amar's testimony (as discussed below), it affirmatively appears that Plaintiff was not prejudiced. Finally, there is no indication of bad faith or willfulness. Defendant may have initially failed to disclose its computation, but its representative did not equivocate once a question was put to him. Accordingly, the Court will consider Amar's testimony and Petri's declaration.[3]

As noted, Defendant need only present evidence that "make[s] an 'approximately accurate estimate' possible." *Gilmore*, 386 P.2d at 82 (quoting *Martin*, 100 P.2d at 183). Amar's and Petri's statements satisfy this standard. Their statements show that Defendant's damages can be determined through simple arithmetic: Plaintiff rented 12 to 14 rooms at prices ranging from $600 to $1,000 per month, and rent was not collected for nine months. Multiplying these figures results in a range of $64,800 to $126,000, making $84,000 an "approximately accurate estimate" of damages. *Gilmore*, 386 P.2d at 82 (quoting *Martin*, 100 P.2d at 183).

The Arizona Court of Appeals' decision in *Great Western Bank* shows that it is

---

[3] The cases cited by Plaintiff in support of the requested sanction all involved much later disclosures. *See Red Equip. Pte Ltd. v. BSE Tech, LLC*, No. 13-cv-1003, 2016 WL 1158738, at *4 (D. Ariz. Mar. 24, 2016) (holding that disclosure made in response to a summary judgment motion was not harmless); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–07 (9th Cir. 2001) (affirming the district court's finding that disclosure made two years after discovery and one month before trial was not harmless); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (affirming the district court's finding that disclosure made over one year after discovery and "a short time" before trial was not harmless); *Bessemer & Lake Erie R.R. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (affirming the district court's sanction where the plaintiff "never turned over" the damages information). They are distinguishable.

proper for a party to present its damages as an estimated range. In that case, the defendant-borrower contracted to borrow money from the plaintiff-lender for the purpose of building a 50-home subdivision, and the lender breached by terminating the contract after the land had been acquired but before the homes were built. 362 P.3d at 1040–41. The trial court held that the borrower "had proven with reasonable certainty it would have profited between $2,808,000 and $3,500,000 had [the lender] not terminated the [contract]." *Id.* at 1041. That "estimated net profit" was based on simple arithmetic:

> The Court concludes that the 50 homes would have sold eventually. At a minimum, Borrower would have been able to sell approximately half of the homes based on the original projection of $70,000 net profit per home and the remainder for at least the revised projection of $42,320 net profit per home. More likely, with Borrower's ability to reduce construction costs to lower price, profits would have been on the higher end of that range.

*Id.* at 1048.

The appellate court upheld this finding although it was an estimated range based on projected future profits. *Id.* at 1048–49. Here, accepting the evidence as true, Defendant's estimated range is based on concrete figures about a loss that has definitely occurred. If the estimated future loss of the borrower in *Great Western Bank* satisfies the reasonable certainty standard, then the estimated past loss of Defendant does as well.

Plaintiff's arguments to the contrary are not persuasive. To begin with, Plaintiff is mistaken about the types of evidence that can be used to prove lost profits. Plaintiff says that "evidence . . . that is all in the form of testimony from plaintiffs do [sic] not satisfy the [reasonable certainty] requirement." This argument rests on a misreading of *Gilmore*. That case says that testimony in the context of a failed development project is "inherent[ly] weak[]." *Gilmore*, 386 P.2d at 83. That does not mean that testimony is always insufficient. Indeed, the court in *Gilmore* never stated that documentary evidence is *necessary* for a claim of lost profits. If that were the rule, it would have been unnecessary for the court to address the many weaknesses in the plaintiff's damages testimony. *See id.*

Next, Plaintiff attacks Amar's and Petri's testimony as "speculative." However, there is nothing speculative about their simple calculations, and the cases cited by Plaintiff

are distinguishable. In *Red Equipment*, the witness testified vaguely that his company had incurred "many hundreds of thousands of dollars" in travel expenses, and that it "wouldn't be appropriate" for him to provide a more specific estimate. 2016 WL 1158738, at *2. He also testified that he was "still trying to assess" the company's lost profits. *Id.* In *Gilmore*, two witnesses gave "ambiguous and confused" testimony about lost profits from the future sale of homes. 386 P.2d at 83. Specifically, they were "uncertain that they had ever shown a profit" from prior development projects; one of them "made several conflicting statements" about the cost and selling price of the homes; those statements "were at odds" with the other witness's statements; there was no testimony about the "profit differentials between the different sizes" of homes; and one of the witnesses did not know the cost of drilling a well to supply water to the homes. *Id.* The testimony in *Red Equipment* and *Gilmore* is a far cry from Defendant's straightforward damages testimony.

Plaintiff next argues that lost profits from uncollected rent can be established only through expert testimony, and that summary judgment is proper because Defendant does not have an expert. But Amar's and Petri's testimony is within the bounds of proper lay testimony. A lay witness may offer an opinion that is "(a) rationally based on [his] perception; (b) helpful to clearly understanding [his] testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Under this rule, a business owner or officer may offer a lay opinion as to his business's *projected profits* when such testimony would be based on his "particularized knowledge" of the business. Fed. R. Evid. 701 advisory committee's note to 2000 amendments. If an officer can offer lay testimony about future lost profits, which involve some degree of prediction, then surely he can offer lay testimony about a concrete past loss. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) ("A company president certainly is capable of projecting lost profits where the projection is based on evidence of decreased sales.").

Amar and Petri have personal knowledge of the Hotel's operations and of the information they factored into their damages estimate, i.e., the number of rooms, the rental

value of the rooms, and the time that rent was not collected.[4] Their estimate is the product of that knowledge and basic math, not information within the realm of an expert. Therefore, it is admissible lay testimony. *Compare Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (permitting a business owner to offer a lay opinion about his projected future profits because of his "knowledge and participation in the day-to-day affairs of his business"), *and BJB Elec. LP v. Bridgelux, Inc.*, No. 22-cv-01886, 2023 WL 4849764, at *6 (N.D. Cal. July 28, 2023) (holding that a president's "lost profit calculations based on 'simple math' and assumptions derived from his personal experience working for [the company were] well within the bounds of lay testimony" (internal citation omitted)), *with Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1108 (D. Ariz. 2019) (holding that a CFO's "sophisticated damages calculation" (involving concepts like "learning curves" and "fully trained rates") required "specialized knowledge" beyond that of a lay witness), *and LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (same where a CEO intended to testify about "moving averages, compounded growth rates, and S-curves").

Finally, Plaintiff argues that Amar's and Petri's testimony is defective because neither witness "accounts for avoided costs." Plaintiff first raised this argument in its reply brief, so the argument is waived for purposes of the summary judgment motion. *See SPUS8 Dakota LP*, 641 F. Supp. 3d at 691. Moreover, Plaintiff's argument makes little sense in this context. The concept of avoided costs is straightforward: "lost profits" means "lost *net* profits," so if an injured party must incur costs to earn revenue, his lost profits equal his gross revenue minus his costs. *See The Potomac*, 105 U.S. 630, 631–33 (1881) (awarding a shipowner his projected trade revenue less the overhead he avoided while his ship was laid up for repairs). It is unclear how this concept applies in this case, and Plaintiff makes no real attempt to explain. Hotels earn revenue by charging guests money in exchange for lodgings. Defendant provided the guests in question with lodgings—and thus incurred the

---

[4] While, as Plaintiff points out, Petri is not an employee of Defendant, that does not render his testimony inadmissible. He is an employee of a company that does business with Defendant, and, because of that relationship, he has knowledge about Defendant's alleged loss. (Doc. 91-1 at 88; Doc. 108-2 at 12; Doc. 108-9.)

costs it normally would—but did not earn revenue. So Defendant did not avoid any costs.

Defendant has presented evidence that it was damaged in a reasonably certain amount by Plaintiff's failure to collect rent. Summary judgment should be denied as to this part of Defendant's counterclaim.

**III.  Summary judgment is proper as to Defendant's remaining claims of damages.**

Defendant alleges that Plaintiff breached the Agreement by failing to hire a hotel manager, mismanaging the Hotel's staff, and failing to provide Defendant with a full list of the Hotel's expenses. (Doc. 18 at 23, ¶¶ 81, 84.) Plaintiff argues that Defendant has no evidence that these alleged breaches resulted in damages. This argument is sufficient to shift the summary judgment burden to Defendant. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that a moving party without the ultimate burden at trial may shift the summary judgment burden by "pointing out through argument the absence of evidence to support" the nonmoving party's claim). Defendant has not met its responsive burden, as it has not submitted evidence that it was damaged by the alleged breaches. *See Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (stating that "the nonmoving party *must* produce evidence" to meet its responsive burden (emphasis added)). Therefore, summary judgment should be granted on this part of Defendant's counterclaim.

Defendant also alleges that Plaintiff breached the Agreement by misappropriating Paycheck Protection Program (PPP) loans that should have been used to pay the Hotel's staff. (Doc. 18 at 23, ¶ 83.) As an initial matter, Defendant argues that Plaintiff did not seek summary judgment on this part of the counterclaim. The Court disagrees. Plaintiff's motion does not include the term "PPP loans," but it is clear that Plaintiff's damages argument applies to each part of Defendant's counterclaim. Plaintiff argues that Defendant "has no evidence of damages and therefore cannot prove its claim as a matter of law"; that Defendant's "only support for its alleged damages is lay witness testimony from a member of one of its owner-LLCs that is based on imprecise speculation"; and that Defendant "has no admissible tangible evidence supporting its alleged damages." (Doc. 90 at 2, 8, 10.)

Thus, Plaintiff made two separate points: (1) Defendant has no evidence as to certain parts of its counterclaim (that Plaintiff failed to hire a hotel manager, mismanaged the Hotel's staff, failed to provide a full list of the Hotel's expenses, and misappropriated PPP loans); and (2) the evidence Defendant does have (regarding uncollected rent) is inadmissible, and thus Defendant cannot prove that part of his claim either. The absence of an extended discussion about missing PPP loans is not surprising, given Plaintiff's position that there is no evidence to discuss.

Plaintiff's argument that Defendant lacks evidence of damages is sufficient to shift the summary judgment burden to Defendant. *Fairbank*, 212 F.3d at 532. Defendant has not carried its responsive burden. Defendant submits evidence showing that Plaintiff received over $800,000 in PPP loans. (Docs. 108-7, 108-8.) The remainder of Defendant's argument, however, is unsupported by evidence. According to Defendant, Plaintiff claims to have applied $118k of the PPP loans to the payroll in 2020 and $87k to the payroll in 2021, but the evidence shows that Plaintiff applied only $87k. Therefore, Defendant says, there is $118k that Plaintiff was supposed to use for the Hotel that is unaccounted for.

Defendant has not presented evidence supporting these supposed statements of fact. For instance, the record contains no evidence about Plaintiff's assertions regarding the PPP loans, nor is there a declaration from an appropriate officer asserting that he has reviewed the operating account statements and determined that Plaintiff never deposited the loans. (*See* DSOF ¶¶ 29–30 (lacking citations to evidence).) Thus, Defendant has shown only that Plaintiff received PPP loans. By itself, that does not support the inference that Plaintiff was supposed to use the funds for the Hotel and failed to do so. Therefore, Defendant has not shown that Plaintiff breached the Agreement in that regard or that Defendant was damaged as a result. Summary judgment should be granted on this part of Defendant's counterclaim.

## Conclusion

The Court finds: (1) there is a triable issue as to whether Defendant waived its counterclaim; (2) there is a triable issue as to Defendant's damages relating to Plaintiff's failure to collect rent; and (3) Defendant has presented no evidence that it was damaged

when Plaintiff failed to hire a hotel manager, mismanaged the Hotel's staff, failed to provide a list of expenses, and misappropriated PPP loans. The net sum of these findings is that summary judgment should be denied as to Defendant's counterclaim for uncollected rent and be granted in all other respects.[5]

* * *

The Court **recommends** that Plaintiff's motion for summary judgment (Doc. 90) be **granted in part** and **denied in part**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Civ. P. 72(b)(2). The parties have 14 days to file responses to objections. *Id.* The parties may not file replies to objections absent the district court's permission. The failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 9th day of January, 2024.

  _____
  Honorable Maria S. Aguilera
  United States Magistrate Judge

---

[5] Defendant argues that summary judgment should be denied completely because there is a triable issue as to which party materially breached the Agreement first. However, that is not a barrier to summary judgment here. If Defendant materially breached first, then it cannot recover on its counterclaim. If Plaintiff materially breached first, then Defendant can recover. By attacking the substance of Defendant's counterclaim, the motion assumes that Defendant will prevail on that issue, so Defendant must come forward with evidence to support its counterclaim. Defendant has not done so with respect to certain parts of its counterclaim, so summary judgment should be granted on those parts.